**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIM. NO. 07-60037-08** |
| **VERSUS** | * | **JUDGE WALTER** |
| **CHRISTOPHER AUCOIN** | * | **MAGISTRATE JUDGE HILL** |

**REPORT AND RECOMMENDATION**

The defendant, Christopher Aucoin ("Aucoin"), was indicted by the grand jury on October 11, 2007 and charged in one count with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). [Record Doc. 3]. Aucoin pled not guilty to the charge. [Record Doc. 50]. The defendant has filed a motion to suppress certain statements allegedly made by him to police on March 21, 2007. [Record Doc. 151]. The government has opposed the motion. [Record Doc. 153]. An evidentiary hearing on the motion to suppress was held on December 18, 2008.

For those reasons set out below, it is the recommendation of the undersigned that the defendant's motion to suppress be **denied.**

**I. FACTS**

Based on the testimony of the witnesses at the hearing, the undersigned finds, as fact, the following.

On March 19, 2007, federal agents and local police began an intensive search for Aucoin's codefendant, Arthur Basaldua ("Basaldua"). Basaldua was being sought in

connection with the shooting of two bail bondsman in the Loreauville, Louisiana area. Basaldua was the target of an ongoing investigation conducted, jointly, by federal, state and local law enforcement officers, which had lasted, at that time, about 18 months. Apparently, Basaldua has an extensive and violent criminal history, and is, purportedly, connected to the "Bandidos" motorcycle gang. The investigation had disclosed that Aucoin was an associate of Basaldua. Accordingly, approximately 6 police officers, led by FBI Special Agent Douglas Carr ("Carr"), and including Lafayette Parish Sheriff's Deputy Mike Fincher ("Fincher"), went to Aucoin's house in search of Basaldua on the evening of March 19.

When the agents arrived at Aucoin's house, they found Aucoin, his father and a third individual in the front yard. Because the agents were unsure of whether or not Basaldua was inside, the agents exited their vehicles with guns drawn. The agents then set up a safety perimeter and, with permission, searched the house. While the search was ongoing, Carr spoke to Aucoin privately. Carr told Aucoin that they were aware of Aucoin's association with Basaldua, that they were aware of Aucoin's prior record and that he, Carr, wanted to speak with Aucoin at a later time about the case. After approximately 20 minutes, not having found Basaldua, the agents left.[1]

---

[1] Aucoin testified that the agents were at the house for 2-2 ½ hours. While the undersigned believes that the time which the agents spent at the house was much less than that, the length of time that the agents spent at the house is irrelevant to this ruling.

At no time on March 19 did Carr or any other police officer give Aucoin his *Miranda* rights.

Apparently, one of the police officers at Aucoin's house left with Aucoin's, driver's license. When this police officer returned Aucoin's driver's license the next day, that officer, allegedly, told Aucoin that unless he, Aucoin, cooperated with the police that he, Aucoin, was going to go to jail for a long time.[2]

Within the next two days, Carr and Aucoin spoke by telephone. Carr told Aucoin that he, Carr, wanted to discuss the case with Aucoin. Aucoin agreed to talk to the agents, but requested that the meeting occur at his, Aucoin's, lawyer's office. Carr agreed, and a meeting was arranged at the office of David Benoit, a lawyer practicing in Breaux Bridge, Louisiana. Apparently, Benoit had represented Aucoin in a prior civil case.

On March 21, 2007, four or five police officers went to Benoit's office to meet with Aucoin. The police, Benoit and Aucoin all met in Benoit's conference room. Benoit asked Carr if Aucoin was a subject of a criminal investigation; Carr answered in the affirmative. Benoit then turned to Aucoin and advised Aucoin that he, Aucoin, needed a "criminal lawyer". Benoit declined to be present during any interview between Aucoin and the police. Aucoin confirmed that he knew, at that time, that Carr considered him to be a target of the investigation, since Carr had told him of his status during their first

---

[2]Aucoin does not allege that anyone offered him immunity in return for his talking to the police. Both Carr and Fincher testified that they informed Aucoin only that any cooperation which he gave to the police would be called to the attention of the United States Attorney.

meeting on March 19.

Aucoin indicated that he was willing to talk to the police, but not to all of the police officers at one time. Aucoin requested to speak to Carr alone; Carr told Aucoin that one other officer had to be present during the interview. Aucoin agreed and Fincher was selected.[3]

During this interview, it is alleged that Aucoin made inculpatory statements to both Carr and Fincher which the Government intends to use at trial. The statements allegedly made by Aucoin to Carr and Fincher at Benoit's office on March 21, 2007, are the only statements made by Aucoin which the Government intends to offer at trial.

Neither Carr, Fincher, nor any other officer gave Aucoin his *Miranda* rights on March 21. When asked by counsel for the government why he, Carr, did not *Mirandize* Aucoin, Carr testified that the interview of Aucoin was non-custodial, that Aucoin was free to terminate the interview at any time and, in fact, was free to leave at any time. Fincher corroborated Carr's testimony in this regard.[4]

Aucoin acknowledged that Benoit had recommended that he, Aucoin, obtain the services of a criminal defense lawyer, but that he, Aucoin, was told by Carr and the other police officers that if he involved a lawyer that they would no longer work with him.

---

[3]Again, Carr and Aucoin disagree on who selected Fincher to be present with Carr during the interview. That dispute need not be resolved here.

[4]Aucoin testified that he did not believe that he was free to leave, and further believed that he was required to answer the questions posed to him by Carr. Aucoin did not give any reason for this belief.

Aucoin testified that he had been told on several occasions that, because of his past criminal history, he was looking at a potential sentence of life imprisonment on Federal conspiracy charges.[5]

Aucoin testified that he did not believe that he could talk to a lawyer because, if he did, the police would no longer talk to him and he faced the likelihood of life in prison. Aucoin also testified that if he had he been told by the police that he had a right to a lawyer, that he would have exercised that right, and made no statement to the police without a lawyer being present. However, Aucoin also testified that in spite of Benoit's recommendation to him, that he, Aucoin, did not believe that he needed a lawyer.[6]

Finally, Aucoin testified that he was "high" on methamphetamine both on March 19 (when the police went to his house looking for Basaldua) and on March 21 (when he made the statements which the government now seeks to use against him at trial). Carr testified that he saw no indication that Aucoin was impaired. Carr testified that Aucoin seemed to understand all of the questions asked of him, and answered all the questions clearly and in detail.

## II. LAW AND ANALYSIS

As framed by the defendant in his motion to suppress, the issue presented here is whether or not the statement given by him was involuntarily, and therefore in violation of

---

[5] In fact, the penalty which Aucoin faces, if convicted, is a maximum of life in prison.

[6] Aucoin does not explain this inconsistency.

his rights under the Fifth and Sixth Amendments, and thus inadmissable against him at his trial. [Record Doc. 151, page 1].

**A. The Fifth Amendment**

In *United States v. Stevens*, 487 F.3d 232 (5th Cir. 2007), the Fifth Circuit succinctly set out this area of the law in the following terms:

> In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that in order to preserve the Fifth Amendment's privilege against self-incrimination, law enforcement officials must inform a suspect in custody of his right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to retain counsel or have counsel appointed for him. Statements obtained during a custodial interrogation without the benefit of adequate warnings under *Miranda* are generally inadmissible. *Missouri v. Seibert,* 542 U.S. 600, 608, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). An individual is "in custody" for purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Bengivenga,* 845 F.2d 593, 596 (5th Cir.1988) (en banc).

*Id.* at 241.

In *Bengivenga* the court defined the term "reasonable person" as follows:

> The reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation-that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances.

845 F.2d at 596.

Since no *Miranda* warning was given to Aucoin, if the interrogation which led to Aucoin making the statements to Carr was "custodial", the statements must be suppressed

as taken in violation of the requirements of *Miranda*. If there was no "custodial interrogation", then *Miranda* has not been violated.

The undersigned finds that the statements made by Aucoin to Carr were not made during a custodial interrogation. Aucoin was not formally under arrest at the time he made the statements. Indeed, Aucoin was not arrested even after he made the inculpatory statements to the police. Additionally, the meeting with the agents was set up by Aucoin, occurred at a lawyer's office selected by Aucoin, outside, so that Aucoin could smoke. Aucoin was obviously free to terminate the interview with the police at any time, and was free to stop answering questions at any time. Aucoin was never under any physical restraint and there is no indication in this record that Carr, or any other officer, was verbally or physically abusive to Aucoin, or otherwise attempted to overbear Aucoin's free will. Under the circumstances presented in this case, the "reasonable person" envisioned by *Bengivenga* would not have "understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id*., 845 F.2d at 596. Therefore, there was no custodial interrogation.

Since the undersigned finds that there was no "custodial interrogation" in this case, there was no violation of *Miranda*. That does not, however, completely end the Fifth Amendment inquiry. The defendant also seems to argue that the statements made by Aucoin to Carr were involuntary because they were the result of physical intimidation or psychological pressure, either overt or subtle. [Record Doc. 151, page 3-4]. The

defendant cites no Fifth Circuit authority in support of his position, and, rather, relies on various cases from the Ninth Circuit.

Assuming, for the sake of this opinion, the validity in this Circuit of the authority cited by the defendant, the defendant has nevertheless failed to show, as a matter of fact, that any such coercion or pressure was present here. In fact, the evidence is clearly to the contrary. Aucoin invited the agents to his lawyer's office, Aucoin decided which two of the agents he wished to speak to, there was no promise of leniency and no threat (direct or indirect) of physical harm or harsh treatment and there was no physical restraint of Aucoin. In short, this record is absolutely devoid of any evidence which would tend to show that the statements made by Aucoin to Carr at Benoit's office on March 21, 2007 were in any way involuntary.[7]

Aucoin's Fifth Amendment claim fails.

**B. The Sixth Amendment**

The memorandum in support of the motion to suppress filed by counsel for Aucoin argues that the statements made by Aucoin were involuntary, and, therefore, made in violation of his Fifth and Sixth Amendment rights. None of the cases relied on by counsel for the defendant are Sixth Amendment cases. Nevertheless, counsel for the defendant does mention the Sixth Amendment in the opening paragraph of his motion to

---

[7]Aucoin seems to argue that the fact that the police arrived at his house on March 19 with guns drawn somehow taints with coercion the statement given at Benoit's office on March 21. If that is indeed the argument, there was no evidence of that adduced at the hearing, and the undersigned rejects that argument.

suppress. [Record Doc. 151, page 1]. In the event that counsel for Aucoin also asserts a Sixth Amendment violation, the undersigned will address that issue, briefly.

The Sixth Amendment guarantees the right to counsel in all criminal prosecutions. However, the Sixth Amendment right to counsel does not attach until a prosecution has been "commenced". *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). The Supreme Court, very recently in *Rothgery v. Gillespie County, Tex.*, ___ U.S. ___, 128 S.Ct. 2578 (2008), noted as follows:

> We have, for purposes of the right to counsel, pegged commencement to " 'the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment,' " (citation omitted) The rule is not "mere formalism," but a recognition of the point at which "the government has committed itself to prosecute," "the adverse positions of government and defendant have solidified," and the accused "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." (citation omitted)

*Id.*, 128 S.Ct. at 2581.

On March 21, 2007, the date that Aucoin made the statement to Carr and Fincher at Benoit's office, Aucoin had not been arrested; no complaint, Indictment or Bill of Information had been filed. Clearly, no adversarial judicial proceedings had yet commenced. Since no adversarial judicial proceedings had commenced, Aucoin's Sixth Amendment right to counsel had not yet attached. Since Aucoin's right to counsel had not attached, there was no Sixth Amendment violation.

### III. CONCLUSION

For the above reasons, it is recommended that the motion to suppress, filed by the defendant Christopher Aucoin, be **denied**.

**Because of the impending trial date, and in view of the deadline for tendering guilty pleas to the court, the undersigned finds good cause for reducing from 10 days, to seven days, the delay within which any party may serve and file written objections to this report and recommendation.** Therefore;

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have seven (7) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within seven (7) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within seven (7) days following the date of its service, shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996)**.

December 22, 2008, Lafayette, Louisiana.

C. Michael Hill
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE